**Robert C. PHILLIPS, D.C., Appellant,**

v.

**AMERICAN MOTORIST INSURANCE COMPANY, Respondent.**

**No. WD 55644.**

Missouri Court of Appeals, Western District.

Submitted Nov. 10, 1998.

Decided May 4, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 1999.

Application for Transfer Denied Aug. 24, 1999.

Jimmie D. James, Independence, for Appellant.

Laurence R. Tucker, Kansas City, for Respondent.

Before ULRICH, P.J.; SMART and EDWIN H. SMITH, JJ.

SMART, Judge.

Dr. Robert Phillips appeals a judgment in favor of American Motorist Insurance Company ("American") in a case involving a claim for tortious interference with the physician-patient relationship. Phillips claims that the trial court erred in excluding evidence related to a tape recording of a telephone conversation between Phillips and the employer of Phillips' patient. Phillips' sole point on appeal is that the trial court erred in holding that § 542.418, RSMo 1994,[1] of the Missouri Wiretap Act required the exclusion of evidence related to the tape recording of the conversation.

The judgment of the trial court is reversed and remanded for a new trial.

## Factual Background

In June 1992, Phillips, a chiropractor, was treating Timothy Wright for work-related injuries. On June 13, 1992, Wright told Phillips that his employer, McDonald's restaurant, had informed Wright that Phillips was no longer authorized to treat him. Wright said his employer told him the workers' compensation insurance carrier had made the decision. After speaking with Wright, Phillips called McDonald's restaurant and spoke with the manager, Melanie Amos, regarding the termination of his authority to treat Wright. The following conversation, which Phillips tape-recorded without Amos' knowledge, took place:

PHILLIPS: He [Wright] said the insurance company had talked to him and they're sending him to a doctor up on Armour Boulevard.

AMOS: Right.

PHILLIPS: Is that what the insurance company told you all?

AMOS: Yes, yes.

PHILLIPS: ... [H]e said that the authority had been withdrawn by the insurance company.

AMOS: Uh-huh [yes].

PHILLIPS: Did they tell you that they didn't want him to come back here again?

AMOS: Right. He is going to seek treatment from another doctor. The doctor that the insurance company uses.

1. All statutory references are to Revised Statutes of Missouri, 1994, unless otherwise indi-cated.

PHILLIPS: Ok. But they contacted you and told you that they were gonna send him there.

AMOS: Right.

Phillips subsequently filed suit against American, the insurance company, alleging tortious interference with his physician-patient relationship with Wright, in violation of § 287.140,[2] and seeking compensatory and punitive damages for interference with a business relationship.

American moved for summary judgment. Attached to its motion for summary judgment was an affidavit signed by Amos stating that she, not American, made the decision to terminate Phillips' authority to treat Wright. In response to American's motion for summary judgment, Phillips filed suggestions in opposition. Attached to Phillips' suggestions in opposition was a transcript of the taped phone call to Amos, in which she stated that American made the decision to terminate Phillips' authority to treat Wright.

American filed a reply in support of its motion for summary judgment. Attached thereto was a second affidavit signed by Amos after she had reviewed the transcript of the phone call. Amos also stated in her second affidavit that she was unaware that Phillips was recording the phone conversation, and that if she had been aware of the potential legal significance of the phone call, she would have admitted that she was the one who made the decision concerning treatment.

Prior to trial, American filed a motion in limine seeking the exclusion of any evidence obtained from the phone conversation between Amos and Phillips. In its motion in limine, American relied upon the Missouri Wiretap Act ("Wiretap Act"), in particular, § 542.418 which states:

> The contents of any wire communication or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any civil or administrative proceeding, except in civil actions brought pursuant to this section.

American sought the exclusion of the tape recording, the transcript of the tape recording and portions of the Amos' second affidavit that referred to the tape recording. Phillips responded that the Wiretap Act, as a whole, should be read to apply only to illegally-obtained evidence received through wiretaps. Phillips argued the recordings in question were not made in violation of the Wiretap Act, and therefore were admissible. The trial court ruled that the tape, the transcript of the tape and the portions of Amos' affidavit referring to the tape were inadmissible under § 542.418.

The trial commenced on January 26, 1998. Phillips called Amos as a witness for plaintiff and attempted to introduce the tape and transcript into evidence. Phillips argued that the evidence should be admitted as prior inconsistent statements to impeach Amos and as substantive evidence on the issue of who actually terminated Phillips' authority to treat Wright. The trial court ruled that Phillips could not introduce the tape, ask Amos about the transcript, or ask Amos about her affidavit referring to the telephone conversation. The court ruled all of this was inadmissible as evidence derived from a wire communication.

Phillips did ask Amos about the conversation with Phillips on June 13, 1992. Amos was asked if Dr. Phillips had asked her the specific questions listed above, and was asked whether she made the specific answers to those questions. She acknowledged she had so answered. The questions and responses in this exchange were identical in content to those which occurred during the telephone conversation. Phillips was not permitted by the court to refer to the fact that the conversation had

---

**2.** Section 287.140.10 provides in pertinent part:

> The employer shall have the right to select the licensed treating physician, surgeon, chiropractic physician, or other health care provider; provided, however, that such physicians, surgeons or other health care providers shall offer only those services authorized within the scope of their licenses.

been recorded, or to the transcript, or to the affidavits executed by Amos.

On examination by American Motorist Insurance Company, Amos acknowledged that her statements to Phillips were not accurate to the extent they indicated that the insurance company had made the choice to terminate Phillips' authority to treat Wright.

On January 28, 1998, a verdict was returned in favor of American. Phillips filed a timely motion for new trial claiming that the tape, the transcript and portions of Amos' second affidavit were wrongfully excluded from evidence, and that the trial court's exclusion of the evidence was prejudicial to his case. The trial court denied Phillips' motion for new trial. Phillips now appeals to this court.

Phillips' sole point on appeal is that the trial court erred in relying on § 542.418 of the Wiretap Act in excluding from evidence the tape recording, transcript and affidavits which contained prior inconsistent statements made by Amos. Phillips argues that the trial court should have considered § 542.418 in conjunction with the entire Wiretap Act and its legislative intent.

## Standard of Review

A trial court has great discretion in determining whether evidence should be excluded. *Kelly by Kelly v. Jackson,* 798 S.W.2d 699, 704 (Mo. banc 1990). The trial court's exclusion of evidence will not be grounds for reversal unless that exclusion amounts to an abuse of discretion. *Id.* The issue is not whether the evidence was admissible, but rather whether the trial court abused its discretion in excluding it. *Copeland v. Mr. B's Pool Ctrs., Inc.,* 850 S.W.2d 380, 381 (Mo.App.1993). An abuse of discretion occurs "when the trial court's ruling is clearly against the logic of the circumstances then before the

court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration...." *Richardson v. State Highway & Transp. Comm'n,* 863 S.W.2d 876, 881 (Mo. banc 1993).

## Statutory Construction

"In interpreting statutes, '[o]ur polestar is the intent of the legislature. Construction must always seek to find and further that intent.'" *Garland v. Director of Revenue,* 961 S.W.2d 824, 830 (Mo. banc 1998) (quoting *Centerre Bank of Crane v. Director of Revenue,* 744 S.W.2d 754, 759 (Mo. banc 1988)). Our interpretation of the relevant provisions of the Wiretap Act must be derived from the plain and ordinary language of the Act. *State v. Knapp,* 843 S.W.2d 345, 347 (Mo. banc 1992); *Jones v. Director of Revenue,* 832 S.W.2d 516, 517 (Mo. banc 1992); *Abrams v. Ohio Pac. Express,* 819 S.W.2d 338, 340 (Mo. banc 1991); *State v. Ruch,* 926 S.W.2d 937, 938 (Mo.App.1996). It is not our place to construe the clear and unambiguous language of a statute. *Tuft v. City of St. Louis,* 936 S.W.2d 113, 118–19 (Mo.App. 1996). When determining whether statutory language is clear and unambiguous, we determine whether the terms of the statute are "plain and clear to one of ordinary intelligence." *Wolff Shoe Co. v. Director of Revenue,* 762 S.W.2d 29, 31 (Mo. banc 1988). If an ambiguity exists, we will seek an interpretation that does not render an absurd result. *Abrams,* 819 S.W.2d at 341.

■ All statutes relating to the same subject matter are considered *in pari materia*[3] and are construed together. *State ex rel. Rothermich v. Gallagher,* 816 S.W.2d 194, 200 (Mo. banc 1991); *State ex rel. Chicago, Rock Island & Pac. R.R. Co. v. Public Serv. Comm'n,* 441 S.W.2d 742,

---

**3.** *In pari materia* is Latin for "[u]pon the same subject matter or subject." BLACK'S LAW DICTIONARY 791 (6th ed.1992). The doctrine of *in pari materia* requires us to interpret and apply statutory provisions with reference to

each other in order to determine legislative intent from the entire statutory enactment. *State v. Tivis,* 948 S.W.2d 690, 697 (Mo.App. 1997).

746 (Mo.App.1969). We will presume that the legislature intended that *in pari materia* statutes be read "consistently and harmoniously." *Rothermich*, 816 S.W.2d at 200. In Missouri, the general rule is that statutes adopted in the same General Assembly session are to be construed in harmony. *Ferrell Mobile Homes, Inc. v. Holloway*, 954 S.W.2d 712, 715 (Mo.App.1997) (citing *Berdella v. Pender*, 821 S.W.2d 846, 849 (Mo. banc 1991)); *see also Rothschild v. State Tax Comm'n of Missouri*, 762 S.W.2d 35, 37–38 (Mo. banc 1988).

> A statute is passed as a whole and not in part or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole. Thus, it is not proper to confine interpretation to the one section to be construed.

*Ferrell*, 954 S.W.2d at 715 (quoting NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46.05 (5th ed.1991)).

### Missouri Wiretap Act [4]

Because we are faced in this appeal with construing one particular section of the Wiretap Act, it will be useful in our analysis to engage in a summary overview of the entire Wiretap Act. The Missouri Wiretap Act, modeled after the Federal Wiretap Act,[5] was enacted in 1989. *State v. King*, 873 S.W.2d 905, 908 (Mo.App. 1994); James R. Wyrsch & Anthony P. Nugent, Jr., *Missouri's New Wiretap Law*, 48 J. Mo. BAR 21, 21 (1992). The Wiretap Act was the result of community pressure to deal with the "problem of cocaine and other drug traffic and abuse." Wyrsch & Nugent, 48 J. Mo. BAR at 21. Thus, one purpose of the statute was to prescribe procedures for the court authorization of official investigative wiretaps directed at illegal drug trafficking. At the same time, the statute reflects legislative concern for the protection of privacy interests against excessive dissemination of information obtained by wiretap, whether court-authorized or not.

Under the Wiretap Act, a prosecuting attorney, with the Attorney General's authorization, may apply for an order that authorizes the interception of a wire communication. § 542.404.1, RSMo 1994. The application must include: (1) the identity of the prosecuting attorney who is applying for the order; (2) a full and complete statement of the facts and circumstances the prosecuting attorney relied upon in forming his belief that an order was necessary; (3) a full and complete statement relaying what other investigative procedures have been employed or considered, and why these procedures failed or were not ultimately attempted; (4) an estimate of how long the interception will be required to be maintained; (5) a full and complete statement relaying previous applications (and their dispositions) for a wiretap regarding any of the same persons; and (6) a statement that adequate resources are available to perform the wiretap and an estimate of how many per-

---

**4.** The Missouri Wiretap Act has become the common name for the legislation. The Wiretap Act was passed as and originally titled "An act relating to drug interception techniques in certain counties...." James R. Wyrsch & Anthony P. Nugent, Jr., *Missouri's New Wiretap Law*, 48 J. Mo. BAR 21, 22 (1992). The Wiretap Act can be found at §§ 542.400—542.424, RSMo Supp.1989. Originally, § 542.424 provided an expiration date of "five years after August 28, 1989." The expiration date was repealed by Senate Bill 693 which became effective on January 1, 1995. § 542.400, RSMo Supp.1995. The Wiretap Act is found in Chapter 542 of the Missouri Revised Statutes which is entitled "Proceed-

ings to Preserve the Peace – Searches and Seizures."

**5.** The Federal Wiretap Act can be found at 18 U.S.C. § 2510 et seq. The Federal Act is Title III of the Omnibus Crime Control and Safe Streets Act, adopted in 1968. The Federal Wiretap Act specifies who may authorize an investigator to apply for a court order, the information the application must contain and the findings a judge must make before issuing the order, how the order is to be executed, how recordings are secured, and many other details. CLIFFORD FISHMAN AND ANNE McKENNA, WIRETAPPING AND EAVESDROPPING, *§ 1.6* (2 d ed.1995).

sons will be required to complete the interception. § 542.408.1, RSMo 1994.

Upon learning of the application, the Missouri Supreme Court is to appoint a circuit court, from a circuit other than the one from which the application originates, to approve or deny the application. § 542.404.1, RSMo 1994. The appointed circuit court may authorize the interception if "there is probable cause to believe that the interception may provide evidence" of a drug-related felony or a conspiracy to commit a drug-related felony. *See* § 542.404.1(1) & (2), RSMo 1994. Where a court finds probable cause exists that an individual is committing or will commit one of these offenses and that communications pertaining to the offense will be intercepted, it may issue an *ex parte* order authorizing or approving the wiretap. § 542.408.3, RSMo 1994. No such order "may authorize or approve the interception of any wire communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days." § 542.408.5, RSMo 1994.

The contents of any authorized wiretap must be recorded, and upon the expiration of the time period set forth in the *ex parte* order, must be made available to the court that issued the order. § 542.410.1, RSMo 1994. A violation of this requirement is punishable as a class A misdemeanor. § 542.410.3, RSMo 1994. Within ninety days of the later of the filing of an application or the expiration of an order, the parties named in the application or order and the parties to the communication must receive notice that the order was entered, the date of the entry and the period of interception authorized, the fact that some conversations were intercepted and the nature of those conversations. § 542.410.4, RSMo 1994.

The contents of an authorized wiretap may not be used as evidence in any trial unless each party has been furnished with a copy of the application, the court order authorizing the interception, and a transcript of the intercepted communication or evidence derived from the intercepted communication. § 542.412.1, RSMo 1994. Upon a motion by an "aggrieved person," the contents of a wiretap or evidence derived from the wiretap may be suppressed if the interception was unlawful; the order authorizing the wiretap was insufficient on its face; the interception did not conform to the order authorizing the wiretap; or the communication was intercepted in violation of the United States Constitution, Missouri Constitution or a state statute. § 542.414.1, RSMo 1994. Evidence obtained in violation of the Wiretap Act is not admissible in any trial or hearing. § 542.420, RSMo 1994.

A person is guilty of the class D felony of illegal wiretapping if he knowingly intercepts a wire communication. § 542.402.1(1), RSMo 1994. Additionally, a person is guilty of illegal wiretapping if he knowingly uses any electronic, mechanical or other device "to intercept any oral communication when such device transmits communications by radio or interferes with the transmission of such communication." § 542.402.1(2), RSMo 1994. However, the statute specifically excludes "the use by law enforcement officers of body microphones and transmitters in undercover investigations for the acquisition of evidence and the protection of law enforcement officers" from the definition of illegal wiretapping. *Id.* In addition to actually intercepting a communication, a person is guilty of illegal wiretapping if he knowingly discloses or uses the contents of any wire communication when he knows or has reason to know that the communication was obtained in violation of the Wiretap Act. § 542.402.1(3) & (4), RSMo 1994.

It is not unlawful for a person to intercept a communication to which he is a party or where one of the parties to the conversation has consented to the interception, provided that he is not doing so for a "criminal or tortious" purpose. § 542.402.2(2) and (3), RSMo 1994. Any investigative or law enforcement officer who has lawfully obtained knowledge of the contents of a wire communication may disclose that information to another inves-

tigative or law enforcement officer for investigative purposes, § 542.406.1, RSMo 1994, or may use the contents to the extent necessary to properly perform his official duties. § 542.406.2, RSMo 1994.

Section 542.418.1 provides that "[t]he contents of any wire communication or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any civil or administrative proceeding, except in civil actions brought pursuant to this section." § 542.418.1, RSMo 1994. Subsection 2 of 542.418 provides that a person whose wire communications were intercepted, disclosed or used in violation of the Wiretap Act, has a civil cause of action against the person who intercepted, disclosed or used the communication, § 542.418.2(1), RSMo 1994, and may recover actual damages, punitive damages, and reasonable attorney's fees and litigation costs. § 542.418.2(2)(a)—(c), RSMo 1994. Good faith reliance on a court order authorizing the interception constitutes a prima facie defense to any action brought pursuant to the Wiretap Act. § 542.418.3, RSMo 1994.

### "Interception"

"Intercept" is defined as "the aural acquisition of the contents of any wire communication through the use of any electronic or mechanical device, including but not limited to interception by one spouse of another spouse." § 542.400(6), RSMo 1994. The word "intercept" appears to have a meaning that is broader than the ordinary meaning of the term. A communication may be "intercepted" even if the person intended to receive the communication actually received it. In any event, the Wiretap Act provides it is not unlawful "under the provisions of [the Wiretap Act] [f]or a person not acting under law to intercept a wire communication where such person is a party to the communica-

tion...." § 542.402.2(3), RSMo 1994. In the case at hand, Phillips recorded a conversation to which he was a party. Thus, it is clear that, even though Phillips' actions constituted an interception, his actions were nevertheless lawful.

### Section 542.418

American argued that, whether unlawful or not, the evidence of the recorded phone conversation must be excluded under § 542.418.1. That subsection, mentioned above, provides:

"The contents of any wire communication or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any civil or administrative proceeding, except in civil actions brought pursuant to this section."

§ 542.418.1, RSMo 1994. American urged the court to deny admission of the transcript of the conversation, citing *United States v. Wuliger*, 981 F.2d 1497 (6th Cir. 1992). *Wuliger* involved a criminal prosecution for a violation of the Federal Wiretap Act in a divorce case in which the recorded conversations were offered for impeachment purposes. *Id.* at 1500.

*Wuliger*, however, is not applicable because it was a decision under § 2515 of the Federal Wiretap Act, which is very different from § 542.418, the statute under which American sought exclusion of the evidence in question.

Section 542.418.2 creates a civil cause of action for "[a]ny person whose wire communication is intercepted, disclosed, or used *in violation* of sections 542.400 to 542.424...." § 542.418.2(1), RSMo 1994 (emphasis added). Several states have statutes providing civil remedies for related to the unlawful interception or use of wire communications. However, Missouri is the only state we found with a subsection worded like § 542.418.1.[6]

---

6. In our research, we found that thirty-three states provide statutory civil remedies for persons whose conversations have been intercepted in violation of the state's Wiretap Act. Missouri is the only one of these thirty-three jurisdictions that expressly excludes the con-

tents of the wiretap from evidence in unrelated civil proceedings. *Compare* § 542.418, RSMo 1994 *with* Ariz. Rev. Stat. § 12–731 (1998); Cal.Penal Code § 629.86 (West 1998); Conn. Gen.Stat. Ann. § 54–41r (West 1997); Del. Code Ann. tit. 11, § 1336 (1997);

### Section 542.418.1 Does Not Mean What It Says

■ In interpreting § 542.418.1 in the context of the entire Wiretap Act, we are faced with the fact that a plain reading of § 542.418.1, without reference to any other provision of the Wiretap Act, seems to preclude the admission of any evidence of any wire communication, whether obtained legally or illegally, in *any* civil proceeding except for one brought under § 542.418.2. Literal application of the statute would mean that no Missouri court could ever allow any testimony concerning any telephone call, e-mail communication or telegram in any civil case except for a case brought under § 542.418.2 for violation of the Wiretap Act itself.

Thus, in a civil suit involving a business dispute, no party could testify as to any telephone communications, fax communications, internet transactions or e-mail communications. Nor would any evidence of the contents, or any evidence derived therefrom, be admissible. The only evidence of communications between the parties that would be admissible would be written correspondence sent in a non-electronic manner. The result of such a rule is that one could easily have a major business dispute with *absolutely no admissible evidence* because all of the business communications involved some form of electronic or wire communications. Needless to say, such a rule would wreak havoc with some business litigation claims. Such a pervasive rule would unreasonably deny access to justice in many instances, and might also be challenged as causing interference with interstate commerce and freedom of contract.

No one argues that such is a proper interpretation of the law, even though the language appears clear on its face. American argues that a proper interpretation of the statute is that the legislature intended to allow parties to testify from memory as to the contents of wire communications, but American offers no explanation for why the legislature's language is so magnificently expansive as to address even evidence of content, and evidence derived therefrom. Nor did the trial court believe that a literal interpretation was a proper interpretation, because the trial court allowed the parties to testify as to the *contents* of the telephone conversation in this case, although the statute's language specifically prohibits the introduction of "the *contents* of any wire communication or evidence derived therefrom."

Although Phillips argues that § 542.418 does not prohibit the introduction of the tape of the telephone call, neither Phillips nor American offers us any clue as to the real meaning of § 542.418.1. It would have been unnecessary to adopt § 542.418.1 if its purpose had been only to exclude evidence obtained from an illegal wiretap, because § 542.420 accomplishes that very purpose. Section 542.420 specifically prohibits the receipt of evidence obtained from an illegal wiretap in "any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority...." § 542.420, RSMo 1994. In addition, if § 542.418.1

D.C.CODE ANN. § 23–554 (1997); FLA. STAT. ANN. § 934.10 (West 1997); HAW. REV. STAT. § 803–48 (1997); IDAHO. CODE § 18–6709 (1997); IND.CODE ANN. § 35–33.5–5–4 (West 1998); IOWA CODE ANN. § 808B.8 (West 1998); KAN. STAT. ANN. § 22–2518 (1997); LA.REV.STAT. ANN. § 15:1312 (West 1998); ME.REV.STAT. ANN. tit. 15, § 711 (West 1997); MD.CODE ANN., CTS. & JUD. PROC. § 10–410 (1997); MASS. GEN. LAWS ANN. ch. 272, § 99Q (West 1998); MINN. STAT. ANN. § 626A.13 (West 1997); MISS.CODE ANN. § 41–29–529 (1998); NEB.REV.STAT. § 86–707.02 (1997); N.H.REV.STAT. ANN. § 570–A:11 (1997); N.J. STAT. ANN. § 2A:156A–24 (West 1998); N.M. STAT. ANN. § 30–12–11 (Michie 1998); N.C. GEN. STAT. § 15A–296 (1997); OHIO REV. CODE ANN. § 2933.65 (Banks–Baldwin 1998); OR. REV. STAT. § 133.739 (1997); 18 PA. CONS.STAT. ANN. § 5725 (West 1998); R.I. GEN. LAWS § 12–5.1–13 (1997); TENN.CODE ANN. § 39–13–603 (1998); TEX.CODE CRIM. P. art. 18.20 § 16 (1998); UTAH CODE ANN. § 77–23a–11 (1998); VA. CODE ANN. § 19.2–69 (Michie 1998); W. VA.CODE § 62–1D–12 (1998); WIS. STAT. ANN. § 968.31 (West 1998).

were meant to exclude all records and evidence of electronic communications, there would have been no need to provide for exclusion of illegal interceptions in § 542.420.

We conclude that the key to understanding § 542.418.1 can be discerned only when the entire statutory scheme is considered. If the statute does not mean what it seems to say when taken alone, there must be something which was assumed by the drafters that is not expressed in the language itself. We will not confine our interpretation to the one section to be construed, but instead will look to all portions of the Wiretap Act. *Ferrell,* 954 S.W.2d at 715. Although we cannot be certain about what § 542.418.1 means, we can be certain about what it does not mean. We also believe that the intent behind this language begins to emerge when we consider the fact that the Wiretap Act deals primarily with authorized wiretaps conducted by law enforcement, rather than with the actions of individuals acting on their own.

Also, we note that one of the concerns of the drafters, while allowing court-authorized wiretaps in order to arrest and convict more drug dealers, was to avoid abuses which might tend to arise incidental to authorized wiretaps. Information gathered through an authorized wiretap could relate to many aspects of a person's private life. The disclosure of that information may be detrimental in many ways. The statute reveals a concern about the improper use of information so obtained. Section 542.406 specifies that law enforcement officers may use the information for investigative purposes, and to the extent necessary for the performance of official duties, but it does not address the use of such information in unrelated civil proceedings. Section 542.412 governs the use of the contents of a wiretap in a criminal prosecution, providing specifically for notice to the accused. Section 542.420 forbids the use of evidence obtained from an *illegal* wiretap in any judicial or administrative proceeding. The only thing not explicit in this web of clear restrictions relates to the admissibility in civil cases of evidence obtained through an *authorized* wiretap. Accordingly, we believe the drafters of § 542.418.1 were attempting to put some limitations on the use in civil and administrative cases of evidence obtained pursuant to *authorized* wiretaps. With that in mind, the language of § 542.418.1 begins to make sense. Thus, the statute which now reads:

> The contents of any wire communication or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any civil or administrative proceeding except in civil actions brought pursuant to this section.

would be construed to read:

> The contents of [an authorized wiretap of] any wire communication or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any civil or administrative proceeding, except in civil actions brought pursuant to this section.

In other words, the drafters of the legislation were concerned with making sure that when law enforcement officers engage in an authorized wiretap, the evidence derived therefrom could not be subpoenaed by civil litigants for use in unrelated civil or administrative proceedings (such as a child custody or dissolution case) but would be utilized only in drug or other criminal prosecutions or in civil cases related to abuses of authorized wiretaps.

We note that § 542.412, dealing with admissibility of wiretap evidence in a criminal trial against suspected drug dealers, requires that the defense be provided copies of the court order, the application and the transcript. The section does not start out saying, "In the case of a court-authorized wiretap...." Instead, § 542.412.1 begins simply with, "[t]he contents of any intercepted wire communications or evidence derived therefrom shall not be received...." It is only later in the subsection that we learn that the subsection was drafted with court authorized wiretaps in mind. Similarly, we believe that the draft-

ers also drafted § 542.418.1 with authorized wiretaps in mind.

■ We believe that the purpose of the legislature in enacting § 542.418.1 was to protect the privacy of individuals by limiting the use of information obtained in a court-authorized wiretap to a criminal case against that person, such as a drug case, or to a civil case based upon unlawful acquisition or dissemination of such information. This seems consistent with the balance the legislature sought to achieve between allowing court-authorized wiretaps for the purpose of effective law enforcement, and limiting the infringement of personal privacy which could result from the recording of private conversations which might contain material which is embarrassing or otherwise detrimental to a party to the conversation.

■ Thus, we conclude that, in spite of its express language, § 542.418 has no application to this case at all, because the recording was not obtained through an official wiretap. The statute was not intended to exclude evidence of either lawful recordings which are relevant and otherwise admissible, or testimony concerning electronic communications. We conclude that the trial court misinterpreted § 542.418.1 as requiring the exclusion of the tape of the telephone conversation, the transcript thereof, and any mention of the fact that the conversation was recorded.[7] The misinterpretation of the statute resulted in a misapplication of the law. We hold

the trial court erred in misapplying the law.

## Prejudice to Phillips

■ The fact that the trial court erred does not necessarily entitle Phillips to relief. Phillips also must show that he was prejudiced by the exclusion of such evidence. *Call v. Heard*, 925 S.W.2d 840, 853 (Mo. banc 1996); *Murray v. Lamont*, 931 S.W.2d 899, 901 (Mo.App.1996).

■ The prejudice analysis in this case is not without some difficulty. Had the trial court applied the statute literally, and excluded all evidence concerning the telephone call, the analysis would be easier. According to the joint statement of the case,[8] Phillips had no evidence on the key issue other than the statement made by Ms. Amos in the telephone call. There is no hint in either the joint statement of the case or anywhere else that there was any other evidence presented by Phillips on the key issue. A prior inconsistent statement of a witness who is available for cross-examination may be used as substantive evidence in a civil trial. *Rowe v. Farmers Ins. Co.*, 699 S.W.2d 423, 428 (Mo. banc 1985). The telephone conversation, which was the only evidence suggesting that American made the decision to revoke Dr. Phillips' authority to treat the patient, was substantive evidence of that proposition. *Id.*

7. Even though we conclude that § 542.418 is not applicable to the tape, transcript, or affidavits, we do not address issues related to the admissibility of the affidavits because those issues are not directly presented. We note that the affidavits are neither judicial admissions nor admissions of a party opponent (because Amos was not a party), and the trial court has not had a chance to exercise its discretion as to other aspects of the evidence which may affect admissibility.

8. The parties in this action submitted a Joint Statement of the Case, pursuant to Rule 81.13. Rule 81.13 provides in pertinent part:
    When the questions presented by an appeal can be determined without an exami-

nation of all the pleadings, evidence and proceedings in the court below, the parties may prepare and sign a statement of the case showing how the questions arose and were decided in the trial court and setting forth only so many of the facts averred and proved or sought to be proved as are essential to a decision of the questions by the appellate court.

Since a joint statement of the parties provides us with those facts which are "essential" to a decision, we are entitled to assume that the joint statement is sufficiently comprehensive to allow this court to properly decide the case.

While the jury did not hear the tape recording of the telephone call itself, the jury was informed as to the exact contents of the telephone call. However, one result of the trial court rulings was that the jury was not permitted to know that the telephone conversation had been recorded. Even though the jury was informed of the contents of the telephone conversation, the jury might have thought that Ms. Amos, in acknowledging in court the fact that she had lied in the telephone call, was now willing, because of her respect for her oath, to be quite candid. The fact that she voluntarily acknowledged the exact content of the telephone call, as she would have been expected *not* to do if she were an unrepentant liar, may have added to her credibility in the eyes of the jury; whereas if the jury would have known that Plaintiff Phillips held in his possession a tape and transcript of the telephone call, the jury would have been less likely to credit Ms. Amos with voluntarily being forthcoming at trial. Since the case hinged entirely on Ms. Amos' credibility, we believe there is a basis for concluding that plaintiff suffered some prejudice.

While the case could not have been extremely strong and persuasive in view of the fact that the prior inconsistent statement was the only substantive evidence Phillips possessed, we are reluctant to say that plaintiff cannot make a submissible case. Respondent American offers no arguments that plaintiff failed to state a cause of action, or that American would be entitled to a directed verdict even if all the evidence were admissible. On remand, the parties may debate issues of credibility, including the plausibility of their different positions. Whatever the truth is concerning the conflict between the telephone call and the later testimony in court, that matter was and is for the jury to determine, with all of the properly admissible facts before it. Because the entire case hinged on Ms. Amos' credibility, and that credibility likely was affected by the trial court's erroneous application of the statute, we conclude that it is necessary to reverse the judgment and remand the case for a new trial.

## Conclusion

The trial court erred in concluding that § 542.418 was applicable to the telephone conversation in question, and barred the plaintiff from making direct use of the tape and the transcript, and, as a result, prohibited Plaintiff Phillips from referring to the fact that the call was recorded. Because we infer that the trial court rulings affected the jury's credibility evaluation of Ms. Amos, we believe that the trial court ruling was prejudicial. We reverse the judgment and remand for a new trial.

ULRICH, P.J., and EDWIN H. SMITH, J. concur.