Allen PRESTON, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 57471.

Missouri Court of Appeals,
Western District.

Oct. 17, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 5, 2000.

Application for Transfer Denied
Jan. 23, 2001.

Rose M. Wibbenmeyer, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Beth S. Riggert, Asst. Atty. Gen., Jefferson City, for respondent.

Before EDWIN H. SMITH, P.J., and LOWENSTEIN and ELLIS, JJ.

EDWIN H. SMITH, Presiding Judge.

Allen Preston appeals the order of the circuit court dismissing without prejudice, for a lack of jurisdiction, his § 552.040 [1] application for conditional release from the custody of the Missouri Department of Mental Health (DMH). He also appeals the dismissal of his oral application to re-

move and replace his guardian, which was made pursuant to § 475.082.5. On or about December 23, 1983, the appellant pled not guilty by reason of mental disease or defect excluding responsibility, pursuant to § 552.030, to burglary in the second degree and was committed to the custody of the DMH. On June 3, 1998, he filed his application for conditional release, which was dismissed by the trial court on June 9, 1999, for a lack of jurisdiction because the appellant's legal guardian had not joined in the application.

The appellant raises two points on appeal. In Point I, he claims that the probate court erred in dismissing his application for conditional release for a lack of jurisdiction on the basis that his guardian had not joined in the application because in doing so the trial court erroneously declared and applied § 552.040 in that, giving the language of the statute its plain and ordinary meaning, his guardian was not required to join in his application. In Point II, he claims that the probate court erred in refusing to entertain his oral application to remove his guardian, which was made during the conditional release hearing, on the basis that it was outside the scope of the pleadings because in doing so it erroneously declared and applied § 475.082.5 in that, under this statute, the court was free to take up his application at any time, including during his conditional release hearing.

We reverse and remand in part, and dismiss in part.

## Facts

On or about December 23, 1983, in the Circuit Court of Clay County, the appellant pled not guilty by reason of mental disease or defect excluding responsibility, pursuant to § 552.030, to a charge of burglary in the second degree. His plea was accepted, after which he was committed to the custody of the DMH and delivered to

---

**1.** All references to Chapter 552 are to RSMo Supp.1999. All other statutory references are to RSMo 1994, unless otherwise indicated.

the St. Joseph State Hospital. On February 18, 1988, the appellant was granted a conditional release from custody. However, approximately seven months later, his conditional release was revoked because he was found to have used and sold marijuana. He was then returned to the St. Joseph State Hospital. In February 1989, after he set fire to an administrative building at the hospital, he was transferred to the Fulton State Hospital.

On November 6, 1990, the appellant filed an application in the Circuit Court of Callaway County for conditional release, pursuant to § 552.040, RSMo 1986, and counsel was appointed for him. A hearing on his application was held on December 10, 1990, which was denied. The court found that the appellant "is still mentally ill and presents a likelihood of harm to others."

On May 3, 1994, Fay Holland, the Callaway County Public Administrator at the time, filed a "Petition for Appointment of Guardian and Conservator" for the appellant and his estate in the Circuit Court of Callaway County, pursuant to §§ 475.060 and 475.061, alleging that he was not capable of handling his own affairs or providing for his most basic physical needs. On May 20, 1994, the court appointed counsel for the appellant pursuant to § 475.075.3. On May 31, 1994, the appellant requested, pursuant to § 475.075.8(2), a jury trial on the issues of his alleged incapacity and disability. The cause proceeded to trial on January 18, 1995. The jury returned its verdict finding that the appellant was totally incapacitated and disabled. On or about February 8, 1995, pursuant to § 475.030, the court entered its order granting letters of full guardianship of the appellant and letters of conservatorship of his estate to Holland.

On January 21, 1997, the probate court found that there was no need to continue the conservatorship of the appellant's estate and terminated it. Thereafter, the court appointed Karen Digh, who had re-placed Holland as the public administrator, as the appellant's successor guardian, placing no limitations on her powers and duties.

On April 22, 1997, the appellant filed in the Circuit Court of Callaway County a second application for conditional release and counsel was appointed for him. A hearing on his application was held on June 2, 1997, which was denied, the court finding that the appellant "remain[ed] mentally ill and continue[d] to present a likelihood of harm to others."

On June 9, 1998, the appellant filed an "amended"[2] application for conditional release from the custody and was again appointed counsel. The appellant's guardian did not join in the application. On May 26, 1999, the State filed a motion to dismiss the appellant's application, which was taken with the case, to be ruled on at the hearing on the appellant's application set for June 9, 1999. On June 9, 1999, at the appellant's application hearing, the State contended that his application should be dismissed because his guardian was not joined as a party as required by Chapter 475. In this respect, the State argued that:

> The guardian in this matter is not a party. She has not brought this petition. This petition has been brought by [the appellant] himself. He lacks the capacity to bring such a petition in that he has a guardian appointed by this court and is thus an incompetent person. An incompetent person is not—they—does not have the capacity to be a party in a civil action, and that under the guardianship statutes of this state, it falls to the guardian to bring this petition on [the appellant's] behalf. This has not occurred.
>
> . . . .
>
> And the party that needs to be bringing this action is the guardian for the ward. And regardless of the style, the law of

---

**2.** The record on appeal does not indicate which initial application for conditional re-

lease his June 9, 1998, application was amending.

Missouri with respect to the incapacity of incompetent people require[s] that to bring an action, an incompetent person, who has had a guardian appointed, that it is the guardian's decision and duty to bring that action on behalf of the ward.

And considering that [the appellant's guardian] has not brought this action, but this is an action independent of the guardian, that that's what destroys the court's jurisdiction.

Digh testified at the hearing that she had been asked to join as a party in the appellant's application for conditional release, but refused to do so. At this point, the appellant's counsel made an oral application on the appellant's behalf for removal of Digh as his guardian on the basis that she was not discharging her responsibilities and duties or acting in the appellant's best interests. The court refused to entertain the application because it was "beyond the scope of where we are now on whether or not the conditional release [application should be granted]." The court then dismissed without prejudice the appellant's application for conditional release finding that, because his guardian was not a party to the application, it lacked jurisdiction to proceed.[3]

This appeal follows.

## I.

In Point I, the appellant claims that the probate court erred in dismissing his application for conditional release for a lack of jurisdiction on the basis that his guardian had not joined in the application because in doing so the court erroneously declared and applied § 552.040 in that, giving the language of the statute its plain and ordinary meaning, his guardian was not required to join in his application. Specifically, he claims that § 552.040 does not

require an incapacitated acquittee for whom a guardian has been appointed, such as himself, to bring his or her application by and through his or her guardian. The State contends that if § 552.040 is read *in pari materia* with the applicable statutes of Chapter 475, RSMo, which governs guardianships, an insanity acquittee is required to bring his or her action for conditional release by and through his guardian.

"A motion to dismiss for lack of subject matter jurisdiction should be granted whenever it appears, by a preponderance of the evidence, that the court is without jurisdiction." *Dorris v. Mo. Substance Abuse Counselors' Certification Bd., Inc.,* 10 S.W.3d 557, 559 (Mo.App. 1999). "The decision to dismiss for lack of subject matter jurisdiction is within the sound discretion of the trial court, and will not be reversed on appeal absent an abuse of that discretion." *Id.* "Judicial discretion is abused only where the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.*

The issue presented in this point necessarily requires us to interpret the statutes implicated. In interpreting statutes, our purpose is to ascertain the intent of the legislature. *State ex rel. Riordan v. Dierker,* 956 S.W.2d 258, 260 (Mo. *banc* 1997). In doing so, we look to the language used, giving it its plain and ordinary meaning. *Id.* When a word used in a statute is not defined therein, it is appropriate to derive its plain and ordinary meaning from a dictionary. *Am. Healthcare Mgmt., Inc. v. Dir. of Revenue,* 984 S.W.2d 496, 498 (Mo. *banc* 1999). The courts are without authority to read into a

---

**3.** Generally, an order of dismissal without prejudice is not a final appealable judgment. *Siampos v. Blue Cross and Blue Shield of Mo.,* 870 S.W.2d 499, 501 (Mo.App.1994). "However, '[w]hen the effect of the order is to dismiss the plaintiff's action and not the pleading merely, then the judgment entered is final and appealable.' " *Id.* In our case, the effect of the court's order of dismissal was to dismiss the appellant's action in that the guardian would not join in his application, and not merely his pleading. As such, the probate court's judgment of dismissal is final and appealable.

statute a legislative intent which is contrary to the intent made evident by giving the language employed in the statute its plain and ordinary meaning. *Kearney Special Rd. Dist. v. County of Clay*, 863 S.W.2d 841, 842 (Mo. *banc* 1993). When the legislative intent cannot be ascertained from the language of the statute, by giving it its plain and ordinary meaning, the statute is considered ambiguous and only then can the rules of statutory construction be applied. *Bosworth v. Sewell*, 918 S.W.2d 773, 777 (Mo. *banc* 1996).

 "Statutory provisions relating to the same subject matter are considered *in pari materia.* ..." *EBG Health Care III, Inc. v. Mo. Health Facilities Review Comm.*, 12 S.W.3d 354, 360 (Mo.App.2000). We are required to "interpret and apply statutory provisions with reference to each other to determine legislative intent." *Phillips v. Am. Motorist Ins. Co.*, 996 S.W.2d 584, 587 n. 3 (Mo.App.1999); *see also Board v. Eurostyle, Inc.*, 998 S.W.2d 810, 814 (Mo.App.1999). "This court presumes that statutes *in pari materia* are intended to be read consistently and harmoniously." *EBG Health Care III, Inc.*, 12 S.W.3d at 360. Thus, where two statutes concerning the same subject matter are unambiguous when read individually but conflict when read together, we will attempt to harmonize them and give effect to both. *State ex rel. Riordan*, 956 S.W.2d at 260; *Wells v. Mo. Property Ins. Placement Facility*, 653 S.W.2d 207, 213 (Mo. *banc* 1983). However, if they cannot be reconciled, the more specific will control over the more general. *Greenbriar Hills Country Club v. Dir. of Revenue*, 935 S.W.2d 36, 38 (Mo. *banc* 1996).

Section 552.040 governs, *inter alia*, applications of committed insanity acquittees for conditional release from DMH custody and provides, in pertinent part:

3. ... Notwithstanding any other provision of law to the contrary, no person committed to the department of mental health who has been tried and acquitted by reason of mental disease or defect as provided in section 552.030 shall be conditionally or unconditionally released unless the procedures set out in this section are followed.

. . . .

10. The committed person or the head of the facility where the person is committed may file an application in the court having probate jurisdiction over the facility where the person is detained for a hearing to determine whether the committed person shall be released conditionally.

A reading of § 552.040 does not disclose any ambiguity as to whether a committed insanity acquittee can file an application for conditional release without his or her guardian joining in the application. Considered alone, when given its plain and ordinary meaning, the language of the statute would appear to allow an incapacitated acquittee who has a legal guardian to file an application for conditional release without his or her guardian joining the application. The State contends, however, that § 552.040 cannot be read alone, but must be read with the applicable provisions of Chapter 475, RSMo, in that the appellant had an appointed guardian. The State further contends that, when the statutes are read together, a committed insanity acquittee for whom a legal guardian has been appointed a legal guardian cannot file his or her application for conditional release without his or her guardian joining in the application.[4]

On January 18, 1995, the appellant was found to be completely incapacitated. An incapacitated person is one who

---

4. In making this argument, the State relies on *McKee v. State*, 967 S.W.2d 702, 703 (Mo.App. 1998). We note that this court disposed of the claims raised on appeal in *McKee* by a memorandum decision and written order entered pursuant to Rule 84.16(b). As such, it does not constitute a formal opinion of this court, cannot be cited, and has no precedential value. *Id.*

is unable by reason of any physical or mental condition to receive and evaluate information or to communicate decisions to such an extent that he lacks capacity to meet essential requirements for food, clothing, shelter, safety or other care such that serious physical injury, illness, or disease is likely to occur.

§ 475.010(9). "A person who has been adjudicated incapacitated or disabled or both shall be presumed to be incompetent." § 475.078.3. Thus, "[a]n adjudication of incapacity or disability does operate to impose upon the ward or protectee all legal disabilities provided by law, except to the extent specified in the order of adjudication. . . ." § 475.078.2. After the appellant was found to be incapacitated, the probate court, pursuant to §§ 475.030 and 475.079.1, appointed a legal guardian for him without any limitation on her powers and duties. A legal guardian is one "appointed by a court to have the care and custody of the person of a minor or of an incapacitated person." § 475.010(6). As such, the appellant's guardian was required to "take charge of [the appellant] and to provide for [his] care, treatment, habilitation, education, support and maintenance." § 475.120.3. The guardian's duties include assuring that the appellant reside in the "best and least restrictive setting reasonably available" and receives "medical care and other services that are needed," and promoting the "care, comfort, safety, health, and welfare of the ward." § 475.120.3(1)-(3).

Giving the language of the applicable statutes of Chapter 475 its plain and ordinary meaning, it is apparent to us that the appellant's guardian had the duty and responsibility to make any and all decisions, which the appellant was presumed not to have the capacity to make, regarding his living arrangements, treatment, health care, and other basic necessities. In our view, this necessarily would include making a decision as to whether it was in the appellant's best interests to be conditionally released from DMH custody in that such a decision necessarily would affect his future living arrangements, treatment, and health care. As such, we would read Chapter 475 as requiring the appellant's guardian, in order to safeguard the appellant's living arrangements, treatment, health care, and other basic necessities, to review and determine whether it was in his best interests for a § 552.040 application to be granted.

■ In reading the implicated provisions of § 552.040 with Chapter 475, we find no conflict. Although we do not believe that the statutes can be read as requiring a guardian to join in an acquittee's application for conditional or unconditional release, we do believe that the guardian would be required to be joined as a necessary party pursuant to Rule 52.04(a).[5] This rule provides, in pertinent part, that:

A person shall be joined in the action if: . . . (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest. . . .

Rule 52.04(a). Based on a guardian's Chapter 475 duty to protect the best interests of his or her ward, the guardian has a statutorily created interest in a ward's conditional release proceeding, which would be impaired or impeded by the guardian's absence therefrom. As such, where an acquittee filing a § 552.040 application for conditional or unconditional release has a guardian, we hold that the guardian is required to be joined as a necessary party.

■ In holding as we do, we are not unmindful of the requirements of Rule 52.02(k). This rule provides:

Whenever it shall be suggested or affirmatively appear to the court that any person not having a duly appointed guardian is incapable by reason of mental or physical infirmity of instituting

---

5. All rule references are to the Missouri Rules of Civil Procedure (1999).

suit or properly caring for the person's own interests in any litigation brought by or against such person, the court shall inquire into the person's mental or physical condition for the purpose of the particular litigation and shall hear and determine such issue. If it is found to be proper for the protection of the person, the court *may* appoint a next friend or guardian ad litem for said person for the purpose of the particular litigation.

Rule 52.02(k) (emphasis added). Although the rule only speaks in terms of a person "not having a duly appointed guardian," where, as here, a guardian has been appointed, but he or she refuses to join the ward in prosecuting his or her application for conditional release, the effect is that, for purposes of that proceeding, the ward is without a guardian. As such, we interpret this rule as requiring the court to consider whether to appoint a guardian ad litem for the acquittee when his or her guardian refuses to assist the acquittee in prosecuting his or her application for conditional or unconditional release. In this context, the sole purpose of an appointed guardian *ad litem* would be to assist the acquittee in prosecuting his or her application.

In our case, the appellant's application was dismissed because his guardian refused to join in the application. This was error under our interpretation of the controlling law. Thus, we must reverse and remand for the probate court to reinstate the appellant's application and conduct a hearing thereon, after first considering whether to appoint a guardian *ad litem*.

## II.

In Point II, the appellant claims that the probate court erred in refusing to entertain his oral application to remove his guardian during the conditional release hearing on the basis that it was outside the scope of the pleadings because in doing so it erroneously declared and applied § 475.082.5 in that, under this statute, the court was free to take up his application at any time. Specifically, the appellant claims that the language of the statute, providing that a ward can move to remove his or her guardian "at any time," required the court to entertain his oral application to remove his guardian at the conditional release hearing.

Although, as a practical matter, the appellant may have harbored hope that the removal and replacement of his guardian would ultimately lead to his application for conditional release being heard on the merits, legally his application was irrelevant to the probate court's determination of his application for conditional release. In keeping with this fact, we note that the appellant makes no claim on appeal that the probate court's ruling on his oral application for removal of his guardian in any way affected the court's dismissal of his application for conditional release. In any event, the appellant's oral application to remove his guardian was procedurally separate and apart from his application for conditional release. Hence, our review of the probate court's ruling on the appellant's oral application for removal of his guardian must stand on its own and is not reviewed as part of our review of the dismissal of his application for conditional release.

We are required to determine our jurisdiction, *sua sponte. McKeever v. Bi-State Dev. Agency,* 988 S.W.2d 599, 600 (Mo.App.1999). In determining our jurisdiction, we would note that the probate court's refusal to hear the appellant's oral application to remove his guardian was, in effect, a dismissal without prejudice of the application based on the failure of the appellant to plead in advance and give notice to the guardian of his intention to seek her removal in the conditional release proceeding. The appellant was free to "refile" his motion such that the dismissal was of his pleading, not his action to remove his guardian. *Siampos,* 870 S.W.2d at 501. Hence, as to the probate court's judgment denying the appellant's oral application for

removal of his guardian, it was not final and appealable, depriving us of appellate jurisdiction. *Id.*

### Conclusion

The judgment dismissing without prejudice the appellant's § 552.040 application for conditional release from the custody of the DMH for a lack of jurisdiction is reversed and the cause is remanded with directions for the circuit court to reinstate the application, join the appellant's guardian as a necessary party, and consider whether to appoint a guardian *ad litem* for appellant under Rule 52.02(k). The appeal of the court's judgment dismissing without prejudice the appellant's oral application to remove and replace his guardian is dismissed for a lack of jurisdiction.

LOWENSTEIN and ELLIS, JJ., concur.