MISSOURI DEPARTMENT OF SO-
CIAL SERVICES, DIVISION
OF AGING, Appellant,

v.

LELAND HEALTH CARE, LLC,
Leland Health Care Center,
Respondent.

No. ED 81481.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 25, 2003.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 16, 2003.

Application for Transfer Denied
May 27, 2003.

James H. Klahr, Jefferson City, MO, for appellant.

Harvey Tettlebaum, Jefferson City, MO, for respondent.

GLENN A. NORTON, Judge.

The Department of Social Services, Division of Aging [1] appeals from a summary judgment entered in favor of Leland Health Care arising from an action for civil monetary penalties against Leland. We affirm in part and reverse in part.

## I. BACKGROUND

We review the record in the light most favorable to the non-movant, the Division, affording it all reasonable inferences from the record. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

Leland operated a skilled nursing facility licensed under the Omnibus Nursing Home Act, Chapter 198 RSMo 2000.[2] In 2001, paramedics responded to two separate calls from Leland. Leland's air-conditioning was apparently malfunctioning. A paramedic recorded the air temperature on the third floor at 98 degrees. One third-floor resident was transported to the hospital where she later died of hyperthermia. Another resident, also on the third-floor, died of hyperthermia before the paramedics arrived.

The Division conducted a month-long complaint investigation at Leland. The investigation focused mainly on the temperature inside the facility. The Division issued a Notice of Noncompliance with a Statement of Deficiencies, citing five violations of state regulations—three class I violations and two class II violations. The Division conducted a re-inspection under section 198.026 two months later and found that the deficiencies had been corrected.

Under section 198.067.2, the Division brought an action for civil penalties against Leland. In its petition the Division sought the assessment of penalties under two separate provisions of the Act. The Division sought $123,000 in penalties for each class I violation [3] under Section 198.067.3(1), which allows for a penalty of up to $1,000 for each day the violation exists. The Division also sought a $10,000 penalty under section 198.067.10, which allows for a penalty of $100 per bed, up to $10,000, for class I violations that result in "serious physical injury" to a resident.

Leland filed a motion for summary judgment. First, Leland argued that the Division could not seek penalties under section

---

1. While this agency is now known as the Missouri Department of Health and Senior Services, it was known as the Division of Aging at the time this suit was filed.

2. All statutory references are to RSMo 2000.

3. At the time of the suit, the Division alleged class I violations of 13 CSR 15–14.032(30), 13 CSR 15–14.042(3) and 13 CSR 15–14.042(13). Since the time the suit was filed, those regulations have been transferred to Title 19 and are now numbered 19 CSR 30–85.032(30), 19 CSR 30–85.042(3) and 19 CSR 30–85.042(13).

198.067.3 because there was not a violation. According to Leland, a violation is a deficiency that has not been corrected upon re-inspection. Because the deficiencies were found to be corrected upon re-inspection, Leland asserted that there was no violation. Next, Leland argued that it was entitled to summary judgment because the Division failed to plead the number of beds licensed to Leland. According to Leland, the number of beds is a required element to state a cause of action for penalties under section 198.067.10.

The trial court granted Leland's motion for summary judgment, and the Division appeals.

## II. DISCUSSION

The propriety of summary judgment is a question of law, and therefore, our review is *de novo*. *ITT*, 854 S.W.2d at 376. The criteria for determining the propriety of summary judgment on appeal are no different than that used at the trial level. *Id.* Although we view the record and construe all inferences favorably to the non-movant, facts set forth in support of the summary judgment motion are taken as true unless contradicted by the non-movant's response. *Id.* at 376.

Leland, as the defending party, may establish a right to judgment by showing (1) facts that negate any one of the elements of the Division's claims, (2) that the Division cannot produce evidence sufficient to allow the trier of fact to find the existence of any one of their elements, or (3) "that there is no genuine dispute as to the existence of *each* of the facts necessary to support [Leland's] properly-pleaded affirmative defense." *Id.* at 381 (emphasis in original). Once Leland has met this burden, the Division must show by reference to the record that "one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed." *Id.* A "genuine issue" exists where the record contains competent materials that demonstrate "two plausible, but contradictory, accounts of the essential facts." *Id.* at 382.

## A. The Statute's definition of "violation" applies to all of Section 198.067.3.

In its first point on appeal, the Division asserts that the trial court erred in granting summary judgment in favor of Leland regarding the assessment of penalties under section 198.067.3, because the definition of "violation" following Section 198.067.3(5) does not apply to section 198.067.3(1)—the provision under which the Division is seeking civil penalties. Section 198.067.3 states:

The operator of any facility which has been cited with a violation of sections 198.003 to 198.096 or the regulations established pursuant thereto, or of subsection (b), (c), or (d) of Section 1396r of Title 42 of the United States Code or the regulations established pursuant thereto, is liable to the state for civil penalties of up to ten thousand dollars for each day that the violations existed or continue to exist. Violations shall be presumed to continue to exist from the time they are found until the time the division of aging finds them to have been corrected. The amount of the penalty shall be determined as follows:

(1) For each violation of a class I standard, not less than one hundred fifty dollars nor more than one thousand dollars;

(2) For each violation of a class II standard, not less than fifty dollars nor more than five hundred dollars;

(3) For each violation of a class III standard, not less than fifteen dollars nor more than one hundred fifty dollars;

(4) For each violation of a federal standard which does not also constitute a violation of a state law or regulation, not less than two hundred fifty dollars nor more than five hundred dollars;

(5) For each specific class I violation by the same operator which has been cited within the past twenty-four months and for each specific class II or III violation by the same operator which has been cited within the past twelve months, double the amount last imposed. *As used in this subdivision the term " violation" shall mean a breach of a specific state or federal standard or statute which remains uncorrected and not in accord with the accepted plan of correction at the time of the re[-]inspection* conducted pursuant to subsection 3 of section 198.026 or the regulations established pursuant to Title 42 of the United States Code. A judgment rendered against the operator of a facility pursuant to this subsection shall bear interest as provided in subsection 1 of section 408.040, RSMo.

Section 198.067.3 (italics emphasis added).

■ The Division contends that the definition of "violation" is meant to apply only to section 198.067.3(5), thereby eliminating double civil penalties for repeat offenders except when the violation is not corrected before re-inspection. According to the Division, the legislature's use of the words "subsection" and "subdivision" in the text of section 198.067.3 demonstrates that the clause "[a]s used in this subdivision" limits the definition of "violation" to section 198.067.3(5). We disagree.

In 1996, the legislature revised this statute in House Bill No. 781. Prior to 1996, the subparts that are now numbered 198.067.3(1)-(5) were then numbered 198.067.2(1)(a)-(e). The Division admits that if this case had arisen before the passage of HB 781 they could not seek civil penalties resulting from class I violations that were corrected by re-inspection. The Division contends, however, that when the legislature renumbered the statute they *sub silentio* restricted the application of "violation" to only those described in the new section 198.067.3(5).

This very argument, among others, was addressed by the Western District in *State of Missouri, Dept. of Social Services, Div. of Aging v. Carroll Care Centers Inc.*, 11 S.W.3d 844 (Mo.App. W.D.2000). The Western District stated that it could not "believe that the legislature intended to make such a drastic change in the meaning of "violation" simply by taking what had been subparagraphs 198.067.2(1)(a)-(e) and renumbering them, without relevant change, as subparagraphs 198.067.3(1)-(5)." *Id.* at 853. We agree. We do not believe that the legislature intended to so greatly change the meaning of "violation" so as to make the term undefined in a majority of the section when it had previously been well-defined and easily applied. *See id.* at 853. The legislature's failure to change the word "subdivision" to "subsection" may have been negligent oversight, but it does not alter the meaning of the clause defining "violation."

■ If the legislature had intended to apply the current definition of "violation" to only 198.067.3(5), then the statute provides no definition for the term as used the other fourteen times throughout the section. Construction of statutes should avoid unreasonable or absurd results. *Murray v. Missouri Highway and Transp. Com'n.*, 37 S.W.3d 228, 233 (Mo. banc 2001). A statutory definition applying to a term in one place while leaving it undefined in fourteen others would be an absurd result. The legislature not only renumbered the sections in HB 781, but they also made significant changes to the rest of the statute. What previously had

been section 198.067.4 was removed, and what are now sections 198.067.6 and 198.067.8–10 were added. We cannot believe that the legislature would make such detailed and thoughtful changes to the rest of the statute and then leave the term "violation" undefined in every part of the statute except section 198.067.3(5).

The Division would have us believe exactly the opposite. According to the Division, restricting the definition of "violation" to section 198.067.3(5) was not only the intention of the legislature when it renumbered the section, but was also consistent with the other changes made in HB 781. The deleted provision of the statute, formerly Section 198.067.4, read:

> In any action to recover a civil penalty under this section, no civil penalty shall be awarded for any period that any facility is attempting in good faith to remedy any noncompliance or for any period where any facility is in good faith litigating any substantial question of law or fact. The provisions of supreme court rule 55.03 of the rules of civil procedure as presently stated or as hereafter amended are expressly applicable to any action under this section to recover a civil penalty.

The Division alleges that if the legislature really wanted to continue to bar penalties for facilities that were working to fix past violations it would have left this provision in the statute. We disagree. The former section 198.067.4 barred civil penalties as long as a facility was "attempting in good faith to remedy noncompliance," and it applied to the entire section 198.067. The current definition of "violation" bars civil penalties only under section 198.067.3 and only if the violation is corrected at the time of re-inspection, not after. Therefore, the deletion of the former section 198.067.4, while leaving the current definition of "violation" in place, gives facilities a limited amount of time to fix violations without being faced with civil penalties. In fact, it appears that this is the very approach the Division was taking with Leland. In a letter to Leland following the issuing of the Notice of Noncompliance, the Division stated, "[i]f at the time of the revisit the violations in the Notice of Noncompliance are found to be uncorrected, the [Division] may seek any sanctions and remedies provided by Section 198.067, RSMo, or may take any action authorized by law."

Applying the definition of "violation" to all of section 198.067.3 is reasonable for other reasons. As noted by the Western District in *Carroll Care*, the portion of the statute defining "violation" is not actually a part of subparagraph (5). 11 S.W.3d at 849. Rather, the definition simply follows subparagraph (5), is unnumbered and is set out flush to the left side of the page. *Id.* That placement seems to indicate that it is a continuation of the first part of the first paragraph of section 198.067.3, rather than a new paragraph, and therefore it applies to all of section 198.067.3. *Id.* Furthermore, when the legislature added section 198.067.10 in 1996, it included the phrase "[t]he liability of the facility for civil penalties pursuant to this section shall be incurred immediately upon the citation of the violation and shall not be affected by any subsequent correction of the violation." It would not be necessary for the legislature to include this line if deficiencies were always considered violations immediately upon discovery. *Id.* If the legislature had wanted violations to be considered to have occurred immediately under section 198.067.3(1), it would have inserted a similar caveat.

■ Moreover, allowing time for the correction of violations between inspections in all cases except those described in section 198.067.10 is consistent with the overall purpose and meaning of the Act.

The purpose of the Act is to "protect the health and safety of citizens who are unable fully to take care of themselves, particularly the more elderly persons, who, from necessity or choice, spend their later years in homes of the type which the statute would license or regulate." *Villines v. Div. of Aging and Missouri Dept. of Social Services,* 722 S.W.2d 939, 943 (Mo. banc 1987). When drafting the Act, the legislature did not "leave the operators alone in their attempt to meet these requirements, but developed a scheme through which the working together with the [Division] could fulfill their statutory obligations to the elderly." *Id.* at 944. The legislature intended to create a working relationship between the Division and nursing facilities to foster efficient correction of deficiencies and provide the highest quality of care to the elderly population of Missouri. *See id.* at 946.

Using the definition of "violation" discussed above, section 198.067.3 allows a facility time between inspections by the Division to correct any deficiencies and avoid civil penalties. If the deficiencies are not corrected at re-inspection, the Division may pursue civil penalties. If the deficiencies are corrected, it does not mean that the facility is exempt from punishment or liability. If, as was the case at Leland, the Division finds a class I violation that "results in serious physical injury" to a resident, then the facility may be liable for civil penalties under section 198.067.10. Further, section 198.092 allows for private causes of action by a resident or a resident's estate.

The Division admits that the deficiencies found at Leland were corrected at the time of the re-inspection. Based on the definition of "violation" in section 198.067.3, Leland cannot be liable for civil penalties under section 198.067.3(1). Summary judgment in favor of Leland regarding the assessment of penalties under section 198.067.3 was proper.

Point I is denied.

## B. The Division may proceed with its assessment of penalties under section 198.076.10.

In its second point on appeal, the Division argues that the trial court erred in granting summary judgment regarding the assessment of penalties under section 198.067.10. In its motion for summary judgment, Leland argues that the Division neither pled nor established the number of beds licensed to Leland and therefore has not properly pled an element of its claim. The Division is not required to plead the number of beds to prove Leland's liability under section 198.067.10.

Section 198.067.10 states that:

... any facility which is cited with a violation of a class I standard pursuant to subsection 1 of section 198.085, when such violation results in serious physical injury or abuse of a sexual nature pursuant to subdivision (1) of section 198.006, to any resident of that facility shall be liable to the state for a civil penalty of one hundred dollars multiplied by the number of beds licensed to the facility, up to a maximum of ten thousand dollars pursuant to subsections 1 and 2 of this section.

Section 198.067.10.

The number of beds at the facility relates to the dollar amount in penalties that a facility may be subject to, not to the facility's liability. Under the statute, a facility is liable if it commits a class I violation that results in serious physical injury to a resident, regardless of the number of beds. Leland, citing *Commercial Bank of St. Louis County v. James,* alleges that a petition that fails to plead statutorily required facts fails to state a claim upon

which relief may be granted. 658 S.W.2d 17, 23 (Mo. banc 1983). *Commercial Bank* involved a claim for statutory interpleader. *Id.* at 21. One of the statutory requirements for interpleader is that "two or more persons have claims against the plaintiff." *See id.* at 22 (citing section 507.060). The Court found that the plaintiff's complaint failed to contain the statutorily required facts showing that two or more people had claims against the plaintiff. *Commercial,* 658 S.W.2d at 23. That requirement was related to the ability to bring a cause of action under the statute. In this case, the number of beds is not a statutory requirement related to the ability to bring a cause of action for penalties under section 198.067.10. The statute establishes no minimum number of beds that a facility must have in order to be subject to penalties under section 198.067.10. As long as the facility has one bed, they can be subject to penalties. The fact that Leland has at least one bed is implied by the fact that it is a functioning skilled nursing facility.

▆ Not only is there no statutory requirement to plead the number of beds under section 198.067.10, there is also nothing in the general pleading rules requiring the number of beds to be pled. Under Rule 55.05,[4] the petition must contain "a short and plain statement of the facts showing that the pleader is entitled to relief." The purpose of this rule is to "present, define and isolate the controverted issues so as to advise the trial court and the parties of the issues to be tried and to expedite the trial of a cause on the merits." *Luethans v. Washington University,* 894 S.W.2d 169, 171–172 (Mo. banc 1995). The trial court does not need to know the number of beds at Leland to try this case on the merits. The trial court was aware that Leland had at least one bed, especially since the number of residents was pled by the Division. Leland knows how many beds for which they are licensed, and the Division is aware that Leland has at least one bed since Leland is a licensed facility. As a result, the number of beds does not need to be pled in order to "present, define and isolate the controverted issues."

Leland has not met its burden under Rule 74.04 regarding the Division's assessment of penalties under section 198.067.10. The Division has alleged facts that if true would meet both of the requirements for liability under Section 198.067.10. Therefore, Leland is not entitled to summary judgment as to the assessment of penalties under section 198.067.10.

Point II is granted.

### III. CONCLUSION

The granting of summary judgment as to the assessment penalties under section 198.067.3 is affirmed. The granting of summary judgment regarding the assessment of penalties under section 198.067.10 is reversed and remanded with instructions to allow the case to proceed on the merits.[5]

WILLIAM H. CRANDALL, P.J. and SHERRI B. SULLIVAN, J. concurring.

---

4. All rule references are to Missouri Court Rules (2001).

5. Leland's motion to strike, taken with the case, is denied.